**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MISSOURI**

**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN LEE FROST, | ) | |
| *Plaintiff* | ) | Cause No. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ERDCC WARDEN RICHARD ADAMS, | ) | |
| *in his official capacity;* | ) | |
| | ) | |
| DIRECTOR TREVOR FOLEY, | ) | |
| *in his official capacity;* | ) | |
| | ) | |
| ERDCC SGT. KEVIN DAHMM, | ) | |
| *in his individual and official capacities;* | ) | |
| | ) | |
| ERDCC C/O LISA HOOKER, | ) | |
| *in her individual and official capacities;* | ) | |
| | ) | |
| ERDCC C/O ORMAN, | ) | |
| *in his/her individual and official capacities;* | ) | |
| | ) | |
| ERDCC C/O MCGUIRE, | ) | |
| *in his/her individual and official capacities;* | ) | |
| | ) | |
| UNKNOWN CAPTAIN/ SHIFT | ) | |
| COMMANDER OR "FUM" (John/Jane Doe), | ) | |
| *in his/her individual and official capacities;* | ) | |
| | ) | |
| UNKNOWN ERDCC  HEALTH SERVICES | ) | |
| ADMINISTRATOR | ) | |
| (John/Jane Doe), | ) | |
| *in his/her individual and official capacities;* | ) | |
| | ) | |
| UNKNOWN CORRECTIONS OFFICER, | ) | |
| (JOHN/JANE DOE) | ) | |
| *in his/her individual and official capacities;* | ) | |
| | ) | |
| CENTURION HEALTH, LLC | ) | |
| | ) | |
| CENTURION OF MISSOURI, LLC | ) | |

1

## COMPLAINT

COMES NOW Plaintiff, JOHN LEE FROST (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, CORVUS LEGAL, LLC, and brings this Complaint seeking damages, declaratory relief, and emergency injunctive relief against Defendants for ongoing and repeated violations of his Constitutional rights. In support of his Complaint, Mr. Frost respectfully states as follows:

## INTRODUCTION

1. This is an action for ongoing violations of Plaintiff's constitutional rights arising from Defendants' deliberate indifference to Plaintiff's serious medical needs, retaliatory acts taken against Plaintiff for engaging in protected conduct, interference with Plaintiff's access to retained counsel, obstruction of administrative remedies, and unconstitutional conditions of confinement at Eastern Reception, Diagnostic, and Correctional Center (hereinafter referred to as "ERDCC").

2. At all times relevant to this lawsuit, Plaintiff was incarcerated at ERDCC.

3. On February 15, 2026, Plaintiff initiated a 32+ day hunger strike after being placed in administrative segregation ("the hole") secondary to unfounded allegations of misconduct that Defendants failed to address in a manner that afforded Plaintiff due process.

4. Despite refusing nearly 100 meals, ERDCC personnel displayed deliberate indifference to Plaintiff's serious medical needs by failing to appropriately monitor Plaintiff during the hunger strike, provide necessary medical oversight or care, comply with Missouri Department of Corrections hunger strike policy, or ensure Plaintiff was provided constitutionally adequate medical care and oversight before and once Plaintiff resumed eating.

2

5.	Plaintiff retained the undersigned counsel in late March 2026, relative to ongoing concerns for his health and safety, retaliation by ERDCC staff, denial of access to administrative remedies, and violations of his constitutional rights.

6.	Plaintiff engaged in protected conduct, including the hunger strike, attempts to initiate the informal resolution request (hereinafter referred to as "IRR") and grievance process, communication with outside advocates, and retention of counsel.

7.	Defendants knew Plaintiff had engaged in protected conduct. After Plaintiff had done so, Defendants subjected Plaintiff to escalating retaliatory acts, including continued and indefinite segregation, deprivation of basic living necessities, deprivation of canteen and legal spend, obstruction of communication, placement in an unsafe cell containing black mold and human feces, and mechanical restraint preventing contact with Plaintiff's attorney.

8.	Defendants' continued efforts to violate Plaintiff's rights by obstructing access to his counsel are buttressed by Defendant Trevor Foley's implementation of a sweeping, restrictive, and unreasonable policy prohibiting postal legal mail without constitutionally adequate safeguards.

9.	Defendants continuously obstructed Plaintiff's ability to initiate and/or complete ERDCC's informal resolution request ("IRR"), grievance, and administrative appellate processes.

10.	Plaintiff seeks compensatory and punitive damages, declaratory relief, and narrowly tailored injunctive relief necessary to prevent ongoing and imminent violations of his constitutional rights.

**PARTIES**

11.     Plaintiff John Lee Frost, at all times relevant to this lawsuit, was an inmate in the custody of the Missouri Department of Corrections housed at ERDCC in Bonne Terre, Missouri.

12.     Defendant Richard Adams, at all times relevant to this lawsuit, was employed as the Warden of ERDCC in Bonne Terre, Missouri, and is sued in his official capacity.

13.     Defendant Trevor Foley, at all times relevant to this lawsuit, was employed as the Director of Missouri Department of Corrections in Jefferson City, Missouri, and is sued in his official capacity.

14.     Defendant ERDCC Sgt. Kevin Dahmm, at all times relevant to this lawsuit, was employed as a Correctional Sergeant at ERDCC in Bonne Terre, Missouri, and is sued in his individual and official capacities.

15.     Defendant ERDCC Corrections Officer Lisa Hooker, at all times relevant to this lawsuit, was employed as a Corrections Officer and Program Specialist at ERDCC in Bonne Terre, Missouri, and is sued in her individual and official capacities.

16.     Defendant ERDCC Corrections Officer Orman, at all times relevant to this lawsuit, was employed as a correctional officer at ERDCC in Bonne Terre, Missouri, and is sued in his/her individual and official capacities.

17.     Defendant ERDCC Corrections Officer McGuire, at all times relevant to this lawsuit, was employed as a correctional officer at ERDCC in Bonne Terre, Missouri, and is sued in his/her individual and official capacities.

18.     Defendant Unknown Corrections Officer (John/Jane Doe), at all times relevant to this lawsuit, was employed as a corrections officer at ERDCC in Bonne Terre, Missouri, and is sued in his/her individual and official capacities.

19. Defendant Unknown Captain/ Shift Commander or "FUM" (John/Jane Doe), at all times relevant to this lawsuit, was employed as a supervising corrections officer at ERDCC in Bonne Terre, Missouri, and is sued in his/her individual and official capacities.

20. Defendant Unknown ERDCC Health Services Administrator (John/Jane Doe), at all times relevant to this lawsuit, was employed in a supervisory role responsible for the medical operations provided by the Centurion entities at ERDCC in Bonne Terre, Missouri, and is sued in his/her individual and official capacities.

21. Upon information and belief, at all times relevant to this lawsuit, the Centurion entities (collectively referred to as "Centurion Defendants") contracted with the State of Missouri, Missouri Department of Corrections, to jointly administer, staff, manage, supervise, and/or provide correctional healthcare services for Missouri Department of Corrections facilities, including ERDCC.

22. Upon information and belief, Defendant Centurion Health, LLC, at all times relevant to this lawsuit, was a private corporate entity involved in administering, managing, supervising, contracting, and/or providing healthcare services for Missouri Department of Corrections Facilities, including ERDCC.

23. Upon information and belief, Defendant Centurion of Missouri, LLC, at all times relevant to this lawsuit, was a private corporate entity involved in administering, managing, supervising, contracting, and/or providing healthcare services for Missouri Department of Corrections Facilities, including ERDCC.

24. Upon information and belief, the Centurion entities acted under color of state law in performing healthcare functions that are traditionally reserved for the State in Missouri Department of Corrections Facilities, including ERDCC.

**JURISDICTION AND VENUE**

25.     This lawsuit is a civil action pursuant to 42 U.S.C. § 1983 arising under the Constitution of the United States of America and the laws of the State of Missouri for violations of Plaintiff's civil rights.

26.     The causes of action for this lawsuit arose in St. Francois County, Missouri, which is in the territorial jurisdiction of the Federal District Court of the Eastern District of Missouri. 28 U.S.C. § 1391(b)(1) and (2).

27.     The Federal District Court for the Eastern District of Missouri has original jurisdiction over claims arising under the Constitution of the United States of America pursuant to 28 U.S.C. §§ 1331 and 1343.

28.     Venue lies in the Federal District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391.

**STATEMENT OF FACTS**

***Plaintiff's Housing in Administrative Segregation ("the hole") was a Result of Defendants'
Failure to Provide Meaningful Due Process to Plaintiff***

29.     Plaintiff has been incarcerated in the Missouri Department of Corrections since 2003.

30.     At all times relevant to this lawsuit, Plaintiff was housed at ERDCC, located at 2727 Highway K, Bonne Terre, Missouri, 63628.

31.     Plaintiff remains housed at ERDCC as of the date of this filing.

32.     Since being in custody at ERDCC, Plaintiff has gained stature in the facility. Prior to the events giving rise to this lawsuit, Plaintiff maintained employment and was a respected leader of programming for young men incarcerated at ERDCC, especially in the sober living

facility where he resided. As a result, Plaintiff maintained certain privileges associated with his good behavior and mentorship prior to being placed in administrative segregation ("the hole").

33.    Upon information and belief, baseless allegations were brought against Plaintiff in December 2025, leading to Defendants initially placing him in the hole. Plaintiff successfully initiated the informal resolution request process relative to the allegations, expressing concerns that the alleged incident was inadequately investigated. Eventually, Plaintiff was cleared of the allegations lodged against him.

34.    Upon information and belief, similar allegations were made against Plaintiff in February, 2026, resulting in Defendants again placing Plaintiff in the hole. *See* Exhibit 1 at 4.

35.    Upon information and belief, advocates for Plaintiff contacted Defendants regarding the repetitive allegations made against Plaintiff, urging Defendants to review facility video footage and afford Plaintiff due process.

36.    Upon information and belief, while Defendant Unknown Correctional Officer (John/Jane Doe) was walking Plaintiff to the hole, Plaintiff asked Defendant Unknown Corrections Officer why he was experiencing retaliation for pressure applied by his support system. Plaintiff was written up for the question.

37.    Once placed in the hole, Plaintiff documented that his door was barricaded and covered with a block that prevented him from being able to see out. Plaintiff also documented that he was denied a pillow, shirts, sheets, toothpaste, a toothbrush, toilet paper, writing paper, stamps, a pen, a bible, dictionary, and soap. *See* Exhibit 1 at 6.

38.    The difference between the sober living facility and the segregation unit is stark. The segregation unit is extremely loud. The air often contains lingering pepper spray. Water, urine, and feces are often on the floors because of cell flooding. Moreover, Defendants routinely

7

punish the entire segregation unit if one inmate causes a disruption. Defendants do not treat inmates in the segregation unit with basic dignity or respect.

39.    Plaintiff repeatedly attempted to communicate his complaints regarding administrative due process, retaliation, and conditions to Defendants through initiation of the administrative grievance procedure via the IRR process. However, Defendants have repeatedly and continuously prevented Plaintiff from doing so while he has been confined in segregation through tactics including, but not limited to, denying Plaintiff the requisite forms, writing utensils, and access to gatekeepers of the process. Moreover, Defendants including ERDCC Corrections Officer Lisa Hooker, who has primarily acted as a gatekeeper of Plaintiff's access to the IRR and grievance process, repeatedly retaliated against Plaintiff for attempting to access it.

***Plaintiff's Hunger Strike was Met with Deliberate Indifference to Plaintiff's Serious Medical Needs and Retaliatory Actions by Defendants***

40.    Shortly after being placed in the hole, on or about February 15, 2026, Plaintiff initiated a hunger strike in response to Defendants' processes (or lack thereof) regarding the allegations made against him and loss of his sober living housing, among other privileges. *See* Exhibit 1 at 7.

41.    Upon information and belief, Defendants placed a cage or other obstruction on the door of the cell, preventing Plaintiff from even being able to see out or watch television.

42.    Plaintiff documented that while he was in the hole, Defendants did not permit him to use the phone, and that he intended on filing an IRR. *See* Exhibit 2.

43.    Upon information and belief, Plaintiff refused meals for over 33 days while being housed in segregation, totaling just short of 100 consecutive meals.

44.     Defendants did not adequately monitor Plaintiff, his mental state, or his physical condition during the hunger strike, in violation of both the Constitution and Missouri Department of Corrections policy.

45.     Centurion Defendants did not adequately monitor Plaintiff, document his condition, or provide necessary, adequate healthcare to Plaintiff during or after his hunger strike.

46.     Upon information and belief, after nine days of the hunger strike, on or about February 23, 2026, a psychiatric nurse completed routine rounds of the facility.

47.     During her rounds, the nurse encountered Plaintiff, who informed her that he had not eaten for approximately nine days (27 meals) and that no one had checked on him. Upon further information and belief, the nurse informed Plaintiff that a failure to monitor an inmate engaging in a hunger strike constitutes a policy violation.

48.     Upon information and belief, the nurse reported Plaintiff's hunger strike to Defendants, who represented that only 6 meals had been missed. At that time, Defendants had not filed the appropriate Missouri Department of Corrections policy-mandated paperwork and/or timely notification.

49.     Upon information and belief, Plaintiff's hunger strike was only reported to Defendant Unknown ERDCC Health Services Administrator (John/Jane Doe) and Centurion Defendants by the psychiatric nurse, who herself inadvertently learned of the situation.

50.     Defendant Unknown ERDCC Health Services Administrator (John/Jane Doe) and Centurion Defendants waited two additional days (until Plaintiff missed 33 meals) to provide any monitoring and/or care to Plaintiff after learning of the strike.

51.     Once he was seen in the infirmary, Plaintiff documented that in front of the nurses, an unknown correctional officer repeatedly yelled at him in a threatening manner, called him a

"b**ch a** mother**er," requiring the nurses ("April" and "Donner") to call for help. As the nurses were doing so, the unknown correctional officer called Plaintiff a "dumb nigger." Upon information and belief, this incident can be seen on internal surveillance from February 25, 2026 at or about 3:20-3:45 P.M.  *See* Exhibit 3.

52.     On February 27, 2026, in an email to his mother, Plaintiff documented that the Assistant Warden came to speak to him to relay Plaintiff's status to Defendant Adams. *See* Exhibit 4 at 1.

53.     In the same email, Plaintiff documented that Centurion Defendants informed him that labs performed were "very bad" and that his "kidneys [were] no longer functioning right." *Id.* at 1. Plaintiff informed Defendants that he would eat "without force" if Defendants handled the allegations against him according to policy.

54.     Plaintiff also documented that to date, no caseworker came to speak with him regarding the allegations, or to provide him with the IRR form necessary to begin administrative proceedings. *Id.* at 3.

55.     On February 27, 2026, pursuant to an order signed by Defendant Adams, Centurion Defendants attempted to provide hydration to Plaintiff, who was told his kidneys were "partially functioning." Upon information and belief, as seen on internal facility surveillance, Centurion Defendants improperly administered an I.V. after eight attempts, causing Plaintiff's arm to severely swell. Centurion Defendants left Plaintiff on a bench without water or appropriate medical intervention for five hours (from approximately 12:45 to 5:45 P.M) despite knowledge that Plaintiff was medically compromised. Defendants did not obtain a medical doctor to evaluate Plaintiff, or transfer him to an outside facility for medical evaluation, despite lab results that raised questions about his kidney function. *See* Exhibit 5.

56. On March 9, 2026, Plaintiff wrote to his mother indicating that Defendants brought him his belongings and necessities for the first time since he was sent to the hole, but Defendant Unknown Captain/Shift Commander or "FUM" ("Henson") then confiscated them. Plaintiff documented that Defendant Unknown Commander/Shift Commander or "FUM" took his face towel, sheets, toilet paper, toothpaste, soap, toothbrush, and pens and other necessities after Plaintiff indicated that he intended to initiate another IRR procedure. *See* Exhibit 6.

57. Upon information and belief, in response, Defendants stripped Plaintiff on camera through use of a three cuff method. *See* Exhibit 6 at 1—3.

58. Upon information and belief, a "three cuff" method during a forced strip refers to forced compliance for being stripped by three points of restraints, cuffs, or officers.

59. On March 11, 2026, Plaintiff still had not eaten. On that date, he documented and informed Defendants that he could not "hold water in," was throwing up water, and involuntarily excreting thick liquid from his rectum at approximately 5:00 A.M. *See* Exhibit 7a at 1; 7b. Plaintiff continued to attempt to document what was occurring and initiate the IRR process, but Defendants took Plaintiff's writing utensils, which he needed to do so.

60. Thereafter, on March 11, 2026, Plaintiff documented that he informed Defendant Unknown ERDCC Corrections Officer ("Boyer") that both of his arms were tingling and going numb. In the email to his mother, Plaintiff documented that Defendant Unknown Corrections Officer ("Boyer") responded by saying "I hope you die." Plaintiff continued beating on the door to attempt to get the attention of Defendant Unknown Corrections Officer because Plaintiff needed water. In response, Defendant Unknown Corrections Officer argued with Plaintiff, stating that Plaintiff would be written up if he continued banging on the door. Plaintiff documented that at this time, he had missed 75 meals. *See* Exhibit 7a at 2—3.

11

61.    On or about March 20, 2026, Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe) wrote Plaintiff up for a minor assault on an inmate after a conflict involving multiple unknown inmates. Plaintiff maintains that he was not engaged in a physical altercation, and in fact, de-escalated the situation. Upon information and belief, internal surveillance from March 20, 2026 corroborates Plaintiff's account. *See* Exhibit 8 at 2—3.

62.    Thereafter, Defendant ERDCC Sgt. Kevin Dahmm used force against Plaintiff, who, by that point, had not eaten since February 15, 2026. In an email to his mother, Plaintiff documented, "SGT. DHAM TOOK ME IN THE BATHROOM, PULLED OUT MACE ON ME WHILE IM STILL IN HAND CUFFS, THREATENING ME TO STRIP OUT WHY MY HANDS ARE BEHIND MY BACK CUFFED! SO I STARTED HYPERVENTILATING TO THE POINT OF ALMOST FALLING AN BUSSING MY HEAD OPEN. HE STILL THREATEN THAT IF I FALL THAT I WILL BE MACED! I WAS EXTREMELY DIZZY FROM SEVERE STARVATION OF WHICH I ALMOST FELL OUT ON MY WAY TO THE HOLE OF WHICH (SGT. LEE) WILL VERIFY! SO SGT. DHAM THEN SHACKLED ME TO A BENCH WITH THE CUFFS SKIN TIGHT TO THE POINT OF MY HANDS SWELLING AN TURNING PURPLE." Upon information and belief, the incident is captured on body worn camera, which shows Plaintiff hyperventilating, weak, shaking from severe starvation, and pleading for help as Defendant ERDCC Sgt. Kevin Dahmm threatened and used force against him. *See* Exhibit 8 at 3—5.

63.    Plaintiff documented Defendant ERDCC Sgt. Kevin Dahmm then moved him shoeless to a cell infested with black mold and without a mattress, that the previous inmate was moved out of due to unsanitary conditions. *Id.* at 5.

64. On the same date, Plaintiff documented that Defendants failed to provide him with the forms necessary to initiate a timely IRR relative to that and other incidents. *Id.* at 7.

65. On or about March 22, 2026, Plaintiff resumed eating after being taken to the medical facility. Plaintiff was evaluated by Centurion Defendant agents ("April and Donner"). Plaintiff requested to be evaluated by a physician. Defendants denied Plaintiff's request.

66. To date, since the start of his hunger strike, Defendants never provided for Plaintiff to be evaluated by a physician. During his hunger strike, Plaintiff lost approximately 45 pounds, ending the strike at merely 133 pounds.

67. On March 26, 2026, Plaintiff submitted a health service request ("HSR") due to vomiting, overheating, stomach pain, heavy sweating, and shaking after resuming eating.

68. Defendants were aware of the risks involved with complications following starvation and improper refeeding.

69. On or about April 6, 2026, Plaintiff emailed his mother indicating that he was moved into a contaminated cell full of black mold, toilet fungus due to an overflowing toilet, and human feces on the wall. Upon information and belief, Defendant Unknown Captain/ Shift Commander or "FUM" asked another inmate to move into the cell with Plaintiff, and the other inmate declined. *See* Exhibit 9.

70. Since resuming eating on or about March 22, 2026, Plaintiff has repeatedly considered initiating another hunger strike in light of Defendants' actions that materially obstructed access to his counsel, Defendants' placement of Plaintiff in unsafe housing conditions, the allegations that remain either unresolved or resolved without meaningful administrative due process, and Defendants' material obstruction to Plaintiff's ability to initiate and/or complete the ERDCC IRR or administrative grievance procedures.

### *Interference with Plaintiff's Confidential Access to Counsel*

71.    Plaintiff retained the undersigned counsel in March, 2026 relative to the claims made in this lawsuit.

72.    On or about April 1, 2026, the undersigned counsel issued preservation notices to ERDCC Staff, including Defendant Adams, the ERDCC Legal and Medical Departments, General Counsel of the Missouri Department of Corrections (Matt Briesacher), and Defendant Trevor Foley via a combination of email, fax, and certified U.S. mail.

73.    On or about April 2, 2026, the undersigned counsel mailed Plaintiff a letter enclosing the retainer agreement and authorization for release of medical records, requesting that Plaintiff sign both and return them to counsel. Considering the Defendants' obstructing Plaintiff's ability to obtain stamps, the correspondence additionally included an empty, pre-stamped, envelope.

74.    On or about April 3, 2026, the undersigned counsel issued a demand letter to the same Defendants, in the same manner, as the preservation notices. Plaintiff did not demand damages. Rather, Plaintiff demanded that he be evaluated and monitored by a medical doctor in light of concern surrounding his health after the prolonged hunger strike. *See* Exhibit 10(a).[1] The demand requested a response within 48 hours of receipt. Defendants did not reply.

75.    After learning that Plaintiff had been placed in unsafe housing conditions, on April 7, 2026, the undersigned counsel issued a supplemental demand letter to Defendants. Again, Plaintiff did not demand damages. Rather, Plaintiff renewed identical demands for medical evaluation and treatment, along with confirmation that Plaintiff would be housed in safe, sanitary

---

[1] Exhibit 10(a) is comprised only of the demand letter sent to Defendant Trevor Foley. Substantially similar demands, identical in content, were issued to Defendant Adams, the ERDCC Legal and Medical Departments, and General Counsel of the Missouri Department of Corrections.

conditions, and that any concerns concerning conditions would be addressed. Importantly, Plaintiff demanded written confirmation that he have access to appropriate means of communication, or an explanation for any restriction thereof. *See* Exhibit 10(b)*.[2]* The demand requested a response within 48 hours of receipt.

76.     On April 10, 2026, at 4:58 P.M., Courtney Chaplin of the Missouri Department of Corrections Office of General Counsel replied via email that a preservation notice was issued and that "[t]he department will not be providing written confirmation as demanded April 3, 2026 and April 7, 2026." *See* Exhibit 10(c).

77.     On April 8, 2026, the undersigned counsel received an email from ERDCC staff member Bradley Lott, Litigations/Policy & Procedure Coordinator, requesting verification that the correspondence had been sent by the undersigned counsel. In this email, Bradley Lott asserted that the post office delivered a damaged envelope containing legal mail. *See* Exhibit 11(a) at 7.

78.     In response, the undersigned counsel responded with verification and requesting a photograph of the damage. *Id.*

79.     Bradley Lott responded with a scanned copy, but it was difficult to discern how the envelope was damaged from the quality of scan. The damage appeared to be to the envelope's flap in a manner consistent with having been opened. When Plaintiff received the envelope, Plaintiff believed it had been opened.

80.     In the same email chain, the undersigned counsel provided a written, letterhead request, for an unrecorded, privileged, legal call with Plaintiff on Tuesday, April 14, 2026, at

---

[2] Exhibit 10(b) is comprised only of the demand letter sent to Defendant Richard Adams. Substantially similar demands, identical in content, were issued to Defendant Foley, the ERDCC Legal and Medical Departments, and General Counsel of the Missouri Department of Corrections.

8:00 A.M. In the same correspondence, the undersigned counsel requested that the damaged legal mail be returned. *See* Exhibit 11(b).

81.    The damaged legal mail was never returned.

82.    Bradley Lott confirmed the legal call on April 13, 2026. *See* Exhibit 11(a) at 4.

83.    The undersigned counsel never received a call from Plaintiff on April 14, 2026, despite multiple calls to the ERDCC facility to inquire as to the reasoning.

84.    Defendants did not provide a rationale for why Plaintiff did not or could not call on April 14, 2026.

85.    After Plaintiff failed to call at the scheduled time, the undersigned counsel contacted Plaintiff's mother to inquire if Plaintiff's mother heard from Plaintiff. Plaintiff's mother had not.

86.    At 8:45 A.M., the undersigned counsel sent an email to Bradley Lott stating that Plaintiff still had not called, and requesting confirmation that a legal call would occur on April 14, 2026. *See* Exhibit 11(a) at 3.

87.    At 8:50 A.M, Plaintiff's mother sent the undersigned counsel screenshots of a message sent by Plaintiff: "THIS IS ALL ON CAMERA RIGHT NOW INSIDE OF HOUSING UNIT 2D. THEY ARRIVED TO GET ME AT AROUND 7:40 AM FROM 2D-112, AND IMMEDIATELY PLACED ME IN FULL MECHANICAL TRANSPORTATION RESTRAINTS AS A MEANS TO HINDER ME FROM SUCCESSFULLY REACHING MY ATTORNEY. NO INMATE HAS EVER BEEN PLACED IN THIS TYPE OF RESTRAINTS IN ORDER TO MAKE A LEGAL CALL!!! … THE GUARDS EVEN SAID THAT THEY HAVE NEVER SEEN IT AND HAVE TO FOLLOW THE ORDERS FO THEIR CAPTAIN OF WHOM THEY SAY TOLD THEM TO DO THIS TO ME . . . MY HANDS ARE GOING

16

NUMB TRYING TO EMAIL THIS, SO I WILL STOP UNTIL I GET BACK TO MY CELL AN OUT OF THESE SHACKLES, BELLY CHAINS, AND HAND CUFFS. TELL NATALIA THIS IS WHY I AM UNABLE TO CALL HER RIGHT NOW AS IM STANDING INSIDE THE PHONE CAGE WITH MY ARMS AND HANDS COMPLETELY SHACKLED TO MY WAIST WITH THE BELLY CHAIN CUFFED UNDER MY BUTT CHEEKS . . . ALSO THE PAY PHONE IS NOT A CONFIDENTIAL CALL WHATSOEVER, OF WHICH IS WHERE THEY GOT ME. MOMMA I MAY HAVE TO GO ON A HUNGER STRIKE!" *See* Exhibit 12. Upon information and belief, the incident was captured on internal facility surveillance.

88.     In similar documentation, Plaintiff stated that he was left in the phone cage for an hour and thirty minutes, restrained in a manner rendering him entirely physically incapable of reaching the telephone receiver.

89.     Upon information and belief, Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe) issued the order to mechanically restrain Plaintiff in the phone cage.

90.     At 9:03 A.M., ERDCC staff member Cindy Hurley, Assistant Warden's Office, responded via email, stating, "I spoke to Mr. Frost's housing unit and was told he was on the phone at 8:00 A.M. I asked if he was on the phone with his attorney and they didn't know." *See* Exhibit 11(a) at 2—3.

91.     At 4:59 P.M., the undersigned counsel emailed Bradley Lott again, stating, "[p]lease note that I had a call scheduled for 8 A.M. and did not receive a call from my client. I received information that my client was prevented from completing a legal call." *Id.* at 2.

92.     On April 15, 2026, at 7:38 A.M., Bradley Lott responded, stating, "Mr. Frost was given the call information and placed on the phone at the scheduled time. From there it is up to him to place the call." *Id.* at 2.

93.     On or about April 17, 2026, the Missouri Department of Corrections issued a mass correspondence indicating that effective July 1, 2026, "paper documents cannot be sent through postal mail from your attorney." The correspondence indicated that those in general population would be able to print documents from a portal during regularly scheduled library time, and those in special units would be scheduled to print documents from the unit. Significantly, the correspondence indicated that "documents will be deleted from the system after 30 days." *See* Exhibit 13.

94.     As a result of Defendants' material obstruction, Plaintiff has been forced to communicate with counsel through third parties and unsecured, non-privileged, means, where possible, such as Securus Messaging.

### *Obstruction of Administrative Grievance Procedures*

95.     Defendants' conduct so pervasively obstructed Plaintiff's access to the IRR and grievance procedures that they were rendered unable to be meaningfully accessed or utilized.

96.     Due to the unavailability of the IRR and grievance procedures, Plaintiff was forced to attempt to document the events at issue in written correspondence with his mother. *See* Exhibits 17, 18, 19.

97.     According to Missouri Department of Corrections Policy D5-3.2 (effective September 25, 2022), inmates are required to request an informal resolution request ("IRR") form from the staff member responsible for processing IRRs, who must provide the inmate with one form per complaint. If an inmate wishes to file an IRR, they must do so within 15 calendar days from the date of incident. If an inmate is not satisfied with the informal resolution, the inmate is required to obtain an offender grievance form and file same within 7 days after the

response on the IRR form. If an inmate wishes to appeal, they must submit an offender grievance appeal form within 7 days of the outcome of the grievance. *See* Exhibit 14.

98.     In various documentation via email with his mother, Plaintiff repeatedly documented his attempts to initiate IRR and internal administrative grievance procedures. Plaintiff also repeatedly documented that Defendants materially obstructed his ability to initiate same. Defendants repeatedly denied him access to the pens and paper necessary to initiate grievance procedures or document the events. As a result, Plaintiff primarily documented each occurrence in descriptive emails to his mother. *See* Exhibit 7(b).

99.     On February 20, 2026, Defendant Unknown Corrections Officer ("Black") threatened to write up Plaintiff if he said he would file another IRR. *See* Exhibit 15(d).

100.    On February 27, 2026, Plaintiff sent an email to his mother indicating that during his hunger strike, he could not obtain the IRR form necessary to initiate the process due to Defendants' refusal to tender them. *See* Exhibit 4 at 3.

101.    On March 26, 2026, Plaintiff sent an email indicating that Defendant ERDCC Corrections Officer Lisa Hooker refused to give Plaintiff copies of the IRRs and grievances that he completed, preventing him from being able to take further action on them within the five day deadline after initial denial. Moreover, Plaintiff documented that Defendants deprived him of legal spend. As a result, Plaintiff was considering initiating an additional hunger strike. *See* Exhibit 15(a), (b).

102.    On March 30, 2026, Plaintiff documented that he was able to complete a 19-page IRR detailing acts of retaliation. Upon information and belief, that IRR details acts committed by Defendants Richard Adams, Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Unknown ERDCC Captain/ Shift Commander(s), and Unknown ERDCC Corrections

Officer(s). Plaintiff requested a full copy from Defendant ERDCC Corrections Officer Lisa Hooker, who acted as the primary gatekeeper of Plaintiff's ability to initiate and complete the IRR procedure per ERDCC administrative staff. *See* Exhibit 15(c).

103.    Plaintiff repeatedly documented needing to attempt to borrow paper and writing utensils to attempt to initiate the IRR and/or grievance procedures, and that IRRs or grievances submitted went missing or unresolved without explanation, preventing Plaintiff from further pursuing the process. *See* Exhibit 1(a) at 3—4; Exhibit 6 at 2; Exhibit 7(b); 15(a) at 2; 15(c) at 2.

104.    By April 8, 2026, despite Plaintiff's placement in the hole for approximately three weeks, Defendants continued to deny Plaintiff hygiene necessities, as well as the necessary materials to initiate or complete the IRR process. Per Plaintiff's documentation, on April 8, 2026, Defendant ERDCC Corrections Officer Lisa Hooker visited Plaintiff's cell and refused to both tender Plaintiff an additional IRR and pick up one Plaintiff had completed. Additionally, Defendant ERDCC Corrections Officer Lisa Hooker refused to provide Plaintiff with the written findings of any investigation into the allegations against him, upon which Plaintiff would base initiation of the IRR and grievance process. Plaintiff asked Defendant ERDCC Corrections Officer Lisa Hooker why she still had not brought him the necessary slip for legal and canteen spend, knowing that Defendant ERDCC Corrections Officer Lisa Hooker knew Plaintiff did not have access to pens and paper, along with hygienic necessities. Plaintiff documented that ERDCC Corrections Officer Lisa Hooker indicated that she was awaiting approval, however, Plaintiff had documentation of said approval in his possession. *See* Exhibit 15(d).

105.    Upon information and belief, Defendant ERDCC Corrections Officer Lisa Hooker continued to deny Plaintiff copies of IRRs and findings on April 10, 2026, knowing that it would

prevent Plaintiff from being able to appropriately initiate any further grievance procedure or appeals relative to same.

106. Upon information and belief, Plaintiff was able to successfully submit an IRR and kite against Defendant ERDCC Sgt. Kevin Dahmm on or about April 13, 2026, evidencing Plaintiff's continued attempts and intent to exhaust administrative remedies despite the obstructions Defendants continued to impose. However, those IRRs and/or grievances that Plaintiff could submit went repeatedly and systematically missing and/or unresolved, preventing Plaintiff from being able to continue the process.

107. Upon information and belief, as of the date of this filing, Defendants have continued to materially obstruct Plaintiff's ability to initiate IRR or grievance procedures by similar tactics, including denying Plaintiff canteen and/or legal spend, refusal to tender and/or collect IRR and/or grievance sheets, and refusal to tender documentation needed to continue on in the process.

108. Upon information and belief, any IRR and/or grievance forms Plaintiff has been able to fill out have been a result of other inmates sharing pens and other necessary supplies.

109. Upon information and belief, Defendants have refused Plaintiff the informal discussions needed to complete the IRR process and permit Plaintiff to determine whether to initiate the formal grievance and appeal process with respect to these Claims.

110. Defendants have similarly prevented Plaintiff from communicating the content of IRR and/or grievances submitted or completed to counsel, either through confidential or non-confidential means.

21

111. Because of Defendants' obstruction and control over the IRR and/or grievance documentation, Plaintiff was unable to affix copies of the IRR and/or grievances, and have instead been forced to rely upon communication with Plaintiff's mother.

112. Defendants' actions rendered the IRR and/or grievance procedures unavailable and unable to be meaningfully accessed, utilized, continued, or completed.

## COUNT I: FAILURE TO PROVIDE HEALTH CARE PURSUANT TO THE EIGHTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES PURSUANT TO 42 U.S.C. § 1983

113. Plaintiff incorporates the preceding paragraphs of this Complaint, as if set forth fully herein.

114. Count I applies to Defendants ERDCC Warden Richard Adams, Director Trevor Foley, ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Unknown Captain/Shift Commander or "FUM" (John/Jane Doe), Unknown Corrections Officer (John/Jane Doe), Unknown ERDCC Health Services Administrator, Centurion Health, LLC, and Centurion of Missouri.

115. Defendants were deliberately indifferent to Plaintiff's serious medical needs.

116. Plaintiff engaged in a prolonged hunger strike beginning on or about February 15, 2026, lasting nearly 33 days and involving refusal of nearly 100 meals.

117. During the hunger strike, Plaintiff lost substantial body weight, ultimately weighing approximately 133 pounds after losing approximately 45 pounds.

118. Plaintiff exhibited obvious and serious medical needs during and after the hunger strike, including starvation, weakness, dehydration, diminished kidney function on lab results, vomiting water, loss of bowel control, numbness and tingling in his arms, and the known risks associated with hunger strikes, starvation, and refeeding.

119.    Defendants knew of Plaintiff's starvation and serious medical needs and observed Plaintiff's physical and mental deterioration.

120.    Prior to Plaintiff resuming eating, Defendants knew that Plaintiff's bloodwork showed diminished kidney function and extreme dehydration. Defendants were also aware that Plaintiff lost a significant amount of his body weight within approximately one month. Defendants knew that Plaintiff was experiencing physical symptoms, such as lack of gastrointestinal control and extreme weakness during the hunger strike.

121.    Even after concerning lab findings regarding kidney function, Defendants did not transfer Plaintiff for outside evaluation, secure physician assessment inside the facility, or provide follow up care or monitoring.

122.    While Defendants attempted hydration by I.V. on or about February 27, 2026, the procedure was improperly performed, causing severe swelling of Plaintiff's arm, after which Plaintiff was left on a bench for an extended period of time without water or continued care.

123.    Once Plaintiff resumed eating on or about March 22, 2026, Plaintiff required immediate medical intervention, including and not limited to physician evaluation of his physical condition and monitoring/implementation of medically recommended refeeding protocols.

124.    Although Plaintiff resumed eating on or about March 22, 2026, Defendants failed to provide medically appropriate refeeding oversight or appropriate follow up care and monitoring, despite the known risks of refeeding syndrome and post-starvation complications.

125.    Defendants knew that Plaintiff required immediate medical intervention.

126.    Defendants failed to provide constitutionally adequate medical treatment.

127.    Plaintiff's serious medical needs persist because since the start of the hunger strike on February 15, 2026, Plaintiff has never been evaluated by a medical doctor.

128.    Defendants have direct knowledge of the risks involved in hunger strikes.

129.    Missouri Department of Corrections maintained written policy concerning management of hunger strikes. *See* Exhibit 16.

130.    IS11-41.2 states that "[w]hen a staff member believes an offender is on a hunger strike, the staff member will immediately notify a unit staff member or shift supervisor, health services administrator (HAS) or designee, institutional chief of mental health services (ICMHS) and the chief administrative officer (CAO) or designee."

131.    Despite knowledge of Plaintiff's declared hunger strike, Defendants failed to notify according to policy.

132.    IS11-41.2 further states that "[h]unger strike monitoring of the offender will continue until a physician's order is written that the hunger strike has ended."

133.    Defendants failed to ensure Plaintiff was ever assessed by a physician, at any point during or after the hunger strike.

134.    Regarding management of hunger strikes, IS11-41.2 states that Defendants should attempt to determine the rationale for an inmate's hunger strike and try to resolve the situation.

135.    Plaintiff advised Defendants of the rationale of the hunger strike and repeatedly requested that they resolve the issue with due process as required by fundamental fairness and Missouri Department of Correction policy. Plaintiff cited to this provision of the hunger strike policy. *See* Exhibit 4.

136.    Defendants did not attempt to resolve the issue.

137. Missouri Department of Corrections policy mandates monitoring of an inmate who is engaging in a hunger strike. A physician or designee is to monitor the inmate no less than three times per week after nine missed meals, and daily after 21 missed meals. Policy also mandates that health services staff monitor the inmate daily to evaluate weight, vital signs, skin turgor, laboratory studies (as deemed appropriate by a physician aware of the circumstances), and overall appearance of the inmate.

138. Defendants did not monitor Plaintiff during or upon completion of his hunger strike in the prescribed manner.

139. Missouri Department of Corrections policy mandates that housing unit staff member(s) complete and submit a form reflecting an inmate's declared hunger strike to the chief administrative officer, Defendant Richard Adams, after three days. Upon information and belief, this notification is to be forwarded to Defendant Foley.

140. Defendants had actual knowledge of Plaintiff's hunger strike.

141. Defendants Unknown Captain/Shift Commander or "FUM" and Unknown Corrections Officer (John/Jane Doe) failed to provide proper timely notification up the Missouri Department of Corrections chain of command.

142. Even if Defendants did not have direct knowledge of Plaintiff's serious medical needs, Defendants have constructive or indirect knowledge of the serious risks involved in hunger strikes and starvation.

143. Defendants knew that housing in the hole and isolation during his hunger strike materially increased the risk of harm to Plaintiff as he starved and medically deteriorated.

144. Despite their knowledge of actual harm and substantial risk of harm to Plaintiff during and following his hunger strike, Defendants failed to meaningfully respond to Plaintiff's

serious medical needs by failing to notify, monitor, and provide medical treatment/physician oversight.

145.    Defendants have continued to fail to address, treat, or evaluate the impact of Plaintiff's unmonitored near month-long starvation.

146.    Defendants remain deliberately indifferent to Plaintiff's serious medical needs.

147.    To date, Defendants still have not provided Plaintiff with physician oversight.

148.    Instead, Defendants have taken affirmative action to punish Plaintiff for the actions of his advocacy network on multiple occasions.

149.    Defendants' intentional acts caused Plaintiff's physical pain, weakness, unnecessary risk of organ injury and other complications, emotional distress, fear, and ongoing uncertainty regarding the extent of his injuries in light of Defendants' continued deliberate indifference.

150.    Defendants acted with malicious, intentional, reckless and callous disregard, or deliberate indifference for Plaintiff's civil rights.

151.    Defendants acted under color of state law.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, injunctive relief requiring that Plaintiff be promptly evaluated by a independent licensed physician and provided medically appropriate treatment and follow up care, and for such other and further relief as this Court deems just and proper.

## COUNT II: EXCESSIVE USE OF FORCE AND UNREASONABLE USE OF RESTRAINTS IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

152.     Plaintiff incorporates the preceding paragraphs of this Complaint, as if set forth fully herein.

153.     Count II applies to Defendant ERDCC Sgt. Kevin Dahmm.

154.     With full awareness that Plaintiff had not eaten since approximately February 15, 2026 and was considerably physically weakened from prolonged starvation, on or about March 20, 2026, Defendant ERDCC Sgt. Kevin Dahmm used excessive force against Plaintiff without legitimate penological justification.

155.     At the time of the incident, Plaintiff was restrained in handcuffs with his hands secured behind his back, and did not pose an immediate threat warranting use of force.

156.     Defendant ERDCC Sgt. Kevin Dahmm took plaintiff into a bathroom, pulled out mace, and threatened Plaintiff while he was restrained.

157.     Defendant ERDCC Sgt. Kevin Dahmm's actions caused Plaintiff to hyperventilate to the point of nearly losing consciousness.

158.     As Plaintiff struggled and pleaded for help, Defendant ERDCC Sgt. Kevin Dahmm threatened Plaintiff with mace if he fell rather than de-escalate the situation.

159.     Shortly thereafter, Defendant ERDCC Sgt. Kevin Dahmm shackled Plaintiff to a bench so tightly that his hands began swelling and turning purple.

160.     Upon information and belief, this incident was captured on body worn camera and/or internal facility surveillance, and, in part, witnessed by other ERDCC staff who attempted to assist Plaintiff.

27

161.    Defendant ERDCC Sgt. Kevin Dahmm then placed Plaintiff in a cell containing no mattress and black mold. Plaintiff was not wearing shoes.

162.    At no time did Plaintiff justify the malicious, sadistic, punitive, and/or excessive force against him.

163.    Defendant ERDCC Sgt. Kevin Dahmm acted under color of state law.

164.    Defendant ERDCC Sgt. Kevin Dahmm acted with malicious, intentional, reckless and callous disregard, or deliberate indifference to Plaintiff's civil rights.

165.    Defendant ERDCC Sgt. Kevin Dahmm's actions caused Plaintiff's physical pain, swelling, circulatory restriction, fear, humiliation, severe emotional distress, and injuries, the full extent of which remain under evaluation.

WHEREFORE, Plaintiff prays judgment against Defendant in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendant from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT III: FAILURE TO PROTECT PLAINTIFF FROM A SUBSTANTIAL RISK OF SERIOUS HARM UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983

166.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

167.    Count III applies to Defendants Director Trevor Foley, ERDCC Warden Richard Adams, ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, ERDCC Corrections Officer Orman, ERDCC Corrections Officer McGuire, Unknown Captain/Shift

Commander or "FUM" (John/Jane Doe), Unknown Corrections Officer (John/Jane Doe), and any Defendant who knew of and disregarded the dangerous conditions alleged herein.

168. Plaintiff was entitled to reasonable protection from conditions posing a substantial risk of harm while incarcerated.

169. At all relevant times, Plaintiff was physically and medically weakened, vulnerable, and susceptible to harm from unsafe housing conditions, deprivation of necessities and appropriate medical care, and staff misconduct.

170. Defendants knew that Plaintiff had undergone a prolonged hunger strike that significant threats to his health and safety.

171. Despite their knowledge, Defendants placed and/or kept Plaintiff in an unsafe, unsanitary cell containing black mold, toilet fungus, human feces, inadequate bedding, and frigid conditions. Upon information and belief, another inmate had recently been vacated from the cell due to the obvious nature of the hazardous conditions.

172. Defendants further deprived Plaintiff of basic hygiene items and necessities.

173. Defendant Director Trevor Foley is employed as Director and maintains oversight over the Missouri Department of Corrections system, including and not limiting to monitoring the safety and conditions of confinement in Missouri Department of Corrections facilities like ERDCC.

174. Defendant Richard Adams is employed as warden of ERDCC, and maintains responsibility of supervising ERDCC staff and monitoring the safety and conditions of confinement at ERDCC.

175. Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe) held supervisory authority over Defendants Unknown Corrections Officer (John/Jane Doe) and other ERDCC corrections officers.

176. Defendant Adams was responsible for the individuals hired and retained as corrections officers and sergeants at ERDCC on and before February 15-April 2026. Upon information and belief, Defendant Adams could have removed any staff member posing threats to the safety or health of any inmate.

177. Upon information and belief, Defendant Adams was aware that Defendants ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe) and Defendant Unknown Corrections Officer (John/Jane Doe) posed a risk to the safety of inmates at ERDCC, including Plaintiff, due to actual and alleged retaliation and failed to intervene or protect the inmates, including Plaintiff.

178. Defendants knew that ERDCC was understaffed at all times relevant to the allegations contained in this Complaint.

179. Defendants knew that understaffing at ERDCC posed a substantial risk of serious harm to inmates, including risks that corrections officers could abuse their authority, cause injuries to inmates, and that inmates would not receive necessary medical care.

180. Defendants failed to protect Plaintiff from ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe), and Defendant Unknown Corrections Officer (John/Jane Doe).

181. Defendants acted under color of state law.

182. Defendants failed to use their authority to properly supervise staff, including ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Defendant Unknown

Captain/Shift Commander or "FUM" (John/Jane Doe) and Defendant Unknown Corrections Officer (John/Jane Doe).

183.    Defendants' failure to protect Plaintiff caused the violation of Plaintiff's civil rights.

184.    Defendants acted with malicious, intentional, reckless and callous disregard, or deliberate indifference for Plaintiff's civil rights.

185.    Defendants caused Plaintiff's physical pain, discomfort, and injuries increased medical risk, severe emotional distress, humiliation, and exposure to unsafe living conditions.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV: RETALIATION FOR EXERCISE OF RIGHTS PROTECTED BY THE CONSTITUTION OF THE UNITED STATES PURSUANT TO 42 U.S.C. §1983

186.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

187.    Count IV applies to Defendants ERDCC Sgt. Kevin Dahmm, ERDCC Corrections Officer Lisa Hooker, Defendant Unknown Captain/Shift Commander or "FUM" (John/Jane Doe), Defendant Unknown Corrections Officer (John/Jane Doe), Defendant Richard Adams, and any other Defendants who participated in, directed, authorized, approved, or knowingly failed to stop the retaliatory conduct alleged herein.

188.    Plaintiff engaged in activity protected by the Constitution of the United States, including and not limited to requesting due process regarding allegations lodged against him, attempting to initiate and complete the IRR and grievance procedures, complaining regarding

31

unsafe and unsanitary conditions, engaging in expressive protest through a hunger strike, communicating with outside advocates, and retaining legal counsel.

189.    Defendants were aware of Plaintiff's protected activities and their protected nature.

190.    Upon becoming aware of Plaintiff's protected activities, Defendants took adverse actions against Plaintiff that would chill a person of ordinary firmness from continuing to engage in such protected activity.

191.    Such adverse actions included, but were not limited to, repeated and indefinite placement of Plaintiff in indefinite administrative segregation, deprivation of hygiene items and necessities, denial of writing materials and IRR/grievance forms, confiscation of Plaintiff's necessities and belongings after he expressed intent to file an IRR, obstruction of Plaintiff's communication with counsel, placement in unsafe and contaminated housing conditions, threats of disciplinary write ups, actual disciplinary write ups, and punitive use of restraints.

192.    Upon information and belief, Defendants also retaliated against Plaintiff due to pressure and scrutiny from Plaintiff's support system and outside advocates contacting ERDCC and Missouri Department of Corrections on Plaintiff's behalf.

193.    While being escorted to segregation Plaintiff asked why he was being retaliated against for said pressure, and Plaintiff was written up for asking the question.

194.    The temporal proximity between Plaintiff's protected activity (especially initiating internal IRR/grievance procedures and retaining counsel) and Defendants' adverse actions, together with Defendants' statements and conduct, support a retaliatory motive.

195.    Defendants' actions were motivated by, in whole or in part, Plaintiff's exercise of protected rights and by hostility toward Plaintiff for seeking advocacy, support, redress, outside assistance, and even outside legal counsel.

196. Defendants lacked a legitimate penological justification for the retaliatory actions taken against Plaintiff, or used pretextual justifications to conceal retaliatory motive.

197. Defendants' retaliatory acts against Plaintiff caused the violation of Plaintiff's civil rights.

198. Defendants acted with malicious, intentional, reckless and callous disregard, or deliberate indifference for Plaintiff's civil rights.

199. Defendants acted under color of state law.

200. Defendants caused Plaintiff's severe emotional distress, humiliation, worsening confinement conditions, interference with administrative remedies, and other damages to be proven at trial on this Cause.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT V: OBSTRUCTION OF PLAINTIFF'S ACCESS TO COUNSEL AND CONFIDENTIAL LEGAL COMMUNICATIONS

### PURSUANT TO 42 U.S.C. § 1983

201. Plaintiff incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

202. Count V applies to Defendants Richard Adams, Trevor Foley, Unknown Captain/Shift Commander or "FUM" (John/Jane Doe), ERDCC Corrections Officer Orman, ERDCC Corrections Officer McGuire, and Unknown Corrections Officer (John/Jane Doe), and

any other Defendant who participated in, directed, authorized, or knowingly failed to stop the conduct alleged herein.

203.    Plaintiff retained the undersigned counsel relative to matters giving rise to this lawsuit, including urgent concerns regarding Plaintiff's health, safety, retaliation, denial of administrative remedies, and violations of Plaintiff's constitutional rights.

204.    Defendants were aware that Plaintiff retained counsel, as evidenced by preservation notices, demand correspondence, requests for privileged and unrecorded legal communication, and direct communications from undersigned counsel to ERDCC and Missouri Department of Corrections personnel.

205.    Plaintiff possessed the constitutional right to reasonable access to counsel and to communicate with counsel through reasonably confidential means free from arbitrary interference, retaliation, or unnecessary burden.

206.    Defendants maliciously, intentionally, recklessly, with callous disregard, or with deliberate indifference obstructed and/or interfered with Plaintiff's access to counsel and confidential legal communications.

207.    Such interference included, but was not limited to, obstructing Plaintiff's receipt and return of legal mail, damaging or withholding legal correspondence, denying Plaintiff the materials necessary to correspond with counsel, denying Plaintiff writing supplies or legal spend, forcing Plaintiff to rely upon third parties and non-privileged communication methods, and failing to provide reasonable means of confidential attorney communication.

208.    On or about April 14, 2026, counsel had a scheduled legal call with Plaintiff at 8:00 A.M, which was confirmed in advance by ERDCC Staff.

209.    Instead of facilitating a meaningful confidential legal call, Defendants ERDCC Corrections Officer Orman and ERDCC Corrections Officer McGuire placed plaintiff in full mechanical restraints, including shackles, a belly chain, and handcuffs.

210.    Upon information and belief, while visible on internal facility surveillance, Defendants placed Plaintiff in a non-confidential phone setting, rather than providing for an appropriate privileged and confidential legal call as properly requested by counsel.

211.    Plaintiff was thereafter left in the phone cage for an extended period of time without the  ability to complete the scheduled legal call due to the restraints.

212.    Plaintiff was left in the phone cage for approximately ninety minutes while restrained, unable to contact his attorney, and experiencing distress and physical pain.

213.    Upon information and belief, Defendant Unknown Captain/Shift Commander or "FUM" ordered the full mechanical restraint and placement in the cage during a scheduled legal call, much to the surprise of other ERDCC staff.

214.    Defendants thereafter represented that Plaintiff had been placed on the phone and that any failure to complete the call was Plaintiff's responsibility.

215.    Defendants further interfered with Plaintiff's access to counsel by damaging, withholding, or failing to return legal mail sent by counsel and labeled according to policy.

216.    Further obstructing Plaintiff's access to counsel, the Missouri Department of Corrections distributed notice that beginning July 1, 2026, paper privileged legal mail could no longer be sent through postal mail. By May 1, 2026, attorneys are to begin enrolling on an online platform for attorney-client communications.

217.    Said notice further stated that documents uploaded through an online portal would be deleted after thirty days and that inmates in special units would be scheduled by staff to print such documents.

218.    Upon information and belief, as applied at ERDCC, the foregoing policy creates an imminent risk of further interference with Plaintiff's access to counsel, confidential legal communications, timely receipt of legal materials, and ability to litigate urgent claims that routinely arise at the facility, particularly in light of the retaliatory conduct, obstruction, and denial of access alleged herein.

219.    Defendant Trevor Foley, in his official capacity and through supervisory authority over Missouri Department of Corrections operations and policies, is a proper defendant for prospective injunctive relief regarding said policy and its enforcement.

220.    Defendants' conduct materially obstructing access to counsel lacked a legitimate penological justification, or any stated justification was pretextual, arbitrary, or unreasonable under the circumstances.

221.    Defendants' actions materially interfered with Plaintiff's ability to consult counsel regarding urgent claims involving medical needs, retaliation, unsafe housing conditions, and ongoing violations of Plaintiff's constitutional rights.

222.    Defendants' conduct further chilled and burdened Plaintiff's ability to seek legal redress and forced Plaintiff to communicate, where possible, through insecure and non-privileged channels.

223.    Defendants' conduct caused Plaintiff physical pain and injury, severe emotional distress, humiliation, delay in legal consultation, impairment of privileged communications, and interference with efforts to obtain timely relief.

224.    Defendants acted with malicious, intentional, reckless and callous disregard, or deliberate indifference for Plaintiff's civil rights.

225.    Defendants acted under color of state law.

WHEREFORE, Plaintiff prays Judgments against Defendants Richard Adams, Trevor Foley, Unknown Captain/Shift Commander or "FUM" (John/Jane Doe), ERDCC Corrections Officer Orman, ERDCC Corrections Officer McGuire, and Unknown Corrections Officer (John/Jane Doe) in an amount that is fair and reasonable, including compensatory damages and punitive damages to deter Defendants from acting similarly in the future, attorneys' fees and costs; declaratory relief; preliminary and permanent injunctive relief prohibiting enforcement of the foregoing legal-mail policy at ERDCC unless and until constitutionally adequate safeguards for confidentiality, timely access, document retention, and meaningful attorney communication are implemented; injunctive relief requiring reasonable confidential attorney access via telephone, visit, and privileged legal correspondence; and for such other and further relief as this Court deems just and proper.

## COUNT VI: POLICY, CUSTOM, FAILURE TO TRAIN AND SUPERVISE, OR ENTITY LIABILITY UNDER 42 U.S.C. § 1983

226.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

227.    Count VI applies to Defendants Richard Adams and Trevor Foley in their official capacities, the Centurion Defendants, Defendant Unknown ERDCC Health Services Administrator (John/Jane Doe), any other Defendant responsible for policies, customs, training, supervision, or operational practices that caused the violations alleged herein.

228.    At relevant times, the Centurion Defendants acted under color of state law in providing medical services in Missouri Department of Corrections facilities, including ERDCC.

37

229.    Upon information and belief, ERDCC and/or the Centurion Defendants maintained customs, practices, or failures of training resulting in inadequate monitoring, escalation, notification, and treatment of inmates engaging in hunger strikes or exhibiting obvious medical deterioration.

230.    Upon information and belief, prior to and contemporaneous with the deliberate indifference Defendants displayed to Plaintiff, Defendants and other ERDCC staff displayed deliberate indifference to the serious medical needs of at least one other inmate engaged in a contemporaneous hunger strike, yet Defendants failed to take corrective action.

231.    Defendants maintained a prison environment wherein known risks to inmate health and safety were inadequately addressed.

232.    The need for training and supervision concerning inmate medical emergencies and hunger strikes was obvious and known to Defendants.

233.    The constitutional violations Plaintiff suffered were caused in whole or part by policies, practices, customs, deliberate failures to train or supervise, or operational indifference maintained by Defendants.

234.    Upon information and belief, ERDCC and/or Missouri Department of Corrections maintained customs or practices permitting staff to obstruct inmate access to administrative grievance procedures through denial of forms, writing materials, withholding responses, or retaliatory gatekeeping.

235.    Upon information and belief, ERDCC and/or Missouri Department of Corrections maintained customs or practices tolerating retaliatory conduct by staff against inmates who sought advocacy, filed complaints and/or lawsuits, pursued administrative grievance procedures, or obtained outside assistance.

236.    Upon information and belief, prior to the retaliatory acts alleged herein, Defendants and other ERDCC staff received complaints from other inmates alleging retaliation for engaging in protected activity, including use of the IRR or grievance procedures, yet failed to take corrective action. *See* Exhibit 20.

237.    Defendants created an unsafe prison environment and maintained practices whereby correctional staff could engage in retaliatory or abusive conduct without accountability.

238.    Defendants failed to properly train staff to ensure that inmates' serious medical needs would be timely and appropriately addressed, and that inmates would not experience retaliation.

239.    Defendants failed to properly train staff to ensure inmates had meaningful access to and understanding of the IRR and internal grievance system to ensure threats to inmate safety and retaliation were addressed.

240.    Defendants failed to properly train staff on how to identify and report retaliatory conduct and/or inmates' serious medical needs, including monitoring and managing hunger strikes.

241.    Defendants' failure to adequately train or supervise staff was deliberately indifferent to the known or obvious risk that constitutional violations would imminently occur and continue unchecked.

242.    Said policies, customs, practices, and failures to train or supervise were moving forces behind the violations of Plaintiff's civil rights.

243.    Despite possessing the authority to implement corrective measures, Defendants continuously failed to remedy known deficiencies in medical responses, administrative grievance procedure access, retaliation prevention, and supervision of staff at ERDCC.

244.    Defendants acted under color of state law.

245.    Defendants' conduct caused Plaintiff physical pain and injury, severe emotional distress, humiliation, delay in legal consultation, impairment of privileged communications, and interference with efforts to obtain timely relief.

WHEREFORE, Plaintiff prays judgment against Defendants in an amount that is fair and reasonable, including compensatory damages, declaratory and injunctive relief, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF AGAINST ONGOING AND IMMINENT VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

246.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint, as if set forth fully herein.

247.    Count VII applies to all Defendants, in their official capacities, who possess authority to implement, cease, modify, supervise, or enforce the practices, conditions, and policies challenged herein.

248.    Plaintiff has suffered violations of his rights under the Constitution of the United States and remains under the custody and control of Defendants.

249.    The unconstitutional conduct alleged herein is ongoing in nature and capable of repetition while Plaintiff remains incarcerated at ERDCC and subject to the authority of Missouri Department of Corrections personnel.

250.    Plaintiff faces a real and immediate threat of continued irreparable harm absent judicial intervention, including but not limited to retaliation, interference with access to counsel, denial of confidential legal communications, obstruction of administrative remedies, unsafe and

40

unsanitary housing conditions, denial of basic hygiene supplies and necessities, and inadequate medical care. *See* Exhibit 17.

251.    Monetary damages alone are inadequate to remedy the ongoing and prospective constitutional injuries alleged herein.

252.    Immediate and prospective equitable relief is necessary to prevent further violations of Plaintiff's constitutional rights and to preserve Plaintiff's meaningful ability to seek legal redress of the violations that have already occurred.

253.    Defendant Richard Adams, in his official capacity as Warden of ERDCC, possesses authority over institutional practices, housing conditions, staff conduct, inmate access to communication outside the facility (including access to counsel), and implementation of relief at ERDCC.

254.    Defendant Trevor Foley, in his official capacity as Director of the Missouri Department of Corrections, possesses authority over statewide policies, departmental directives, and institutional oversight of ERDCC relevant to the relief sought herein.

255.    Plaintiff is likely to succeed on the merits of at least one of the claims alleged in this Complaint, has no adequate remedy at law as to the ongoing violations, and the balance of equities favors relief preventing continued constitutional harm.

256.    Public interest demands lawful prison administration, meaningful attorney access, adequate medical care, and compliance with the supreme law of the United States found within the Constitution.

257.    WHEREFORE, Plaintiff respectfully requests that this Court enter declaratory and injunctive relief including, but not limited to the following:

a. Declaring that the acts, omissions, practices, application of current policies, and prospective mail policy violate Plaintiff's rights under the Constitution of the United States;

b. Enjoining Defendants from retaliating against Plaintiff in any way for engaging in protected conduct, seeking and retaining counsel, pursuing IRRs or grievances, or initiating litigation against Defendants;

c. Requiring Defendants provide Plaintiff reasonable and confidential access to his counsel through legal calls, visits, and privileged legal correspondence free from interference or obstruction;

d. Enjoining enforcement of any legal-mail or privileged-document policy that lacks constitutionally adequate safeguards for confidentiality, timely access, meaningful receipt, and reasonable document retention at ERDCC;

e. Requiring Defendants to provide Plaintiff with a constitutionally adequate medical evaluation, necessary treatment, and monitoring consistent with his serious medical needs following his prolonged hunger strike;

f. Requiring Defendants to abide by Missouri Department of Corrections hunger strike policy;

g. Requiring Defendants to provide humane and sanitary housing conditions, together with reasonable access to basic necessities, including hygiene items;

h. Requiring Defendants to refrain from obstructing Plaintiff's access to administrative remedies;

i. Awarding Plaintiff attorneys' fees, costs, and expenses as permitted by law; and

j. Granting such other and further relief as this Court deems just and proper.

43

DATED: May 7, 2026

RESPECTFULLY SUBMITTED,

*Natalia A. Ogurkiewicz*

CORVUS LEGAL, LLC
Natalia A. Ogurkiewicz, #72951 MO
10021 S. Western Avenue
Chicago, IL  60643
Phone: (312) 999-7414
Fax: (317) 967- 8479
natalia@corvus-legal.com
*Attorney for Plaintiff, John Lee Frost*