UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN LEE FROST,

    *Plaintiff,*

v.

RICHARD ADAMS, *et al.*,

    *Defendants.*

No. 4:26-cv-00709-MAL

**MEMORANDUM & ORDER**

Before the Court is Plaintiff Frost's Motion for a Temporary Restraining Order (Doc. 3).  For the following reasons, the motion is **DENIED**.

### I.    Background

Many facts in this case are disputed.  Parties seem to agree on the following. John Frost is an inmate at the Missouri Department of Corrections in Bonne Terre, Missouri.   (Doc. 8 at ¶¶ 29–30).  Frost was placed in administrative segregation in December 2025 and February 2026 after he was accused of masturbating to a female officer. *Id*. at ¶¶ 32–34; Doc. 4-1 at 2.  Maintaining his innocence, and in frustration with prison staff, Frost initiated a 32-day hunger strike after being placed in administrative segregation.  (Doc. 8 at ¶ 3).

After this, the facts become contested.  Frost alleges that during his time on his hunger strike, Defendants did not adequately monitor his condition or provide appropriate medical care.  (Doc. 8 at ¶ 44).  Defendants report that Frost received adequate medical care, was moved to the infirmary after declaring a hunger strike, and while there he frequently refused medical care.  (Doc. 12 at 4) (citing Doc. 12-1). The medical records indicate that Frost was evaluated by a physician sixteen days after he ended his strike, who noted no significant medical issues requiring

1

immediate attention. (Doc. 12-1 at 1; Doc. 12-2 at ¶ 11). At the time of that evaluation (May 7, 2026), the medical records indicate that Frost's only complaint was nausea. (Doc. 12-1 at 22).

In addition to inadequate medical care, Frost also maintains that Defendants retaliated against him for filing this suit, availing himself of the prison grievance process, and retaining an attorney. (Doc. 8 at 31, 33). Frost alleges Defendants interfered with his access to counsel by obstructing receipt and return of legal mail, damaging or withholding correspondence, denying Frost materials necessary to contact and write to counsel, and failing to provide reasonable means to confidential attorney communication. *Id*. at ¶ 207.

Frost filed a Complaint (Doc. 8) and a Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 3). Frost asked for a TRO and PI directing the ERDCC Warden Richard Adams and Missouri DOC Director Trevor Foley to (1) have Frost promptly evaluated by a physician within 48 hours for mental and physical complications arising from his hunger strike; (2) ensure Frost is provided appropriate follow up care for any complications/conditions; (3) prevent retaliation against Frost for filing the present Action, contacting counsel, and initiating the IRR (informal resolution request) and grievance procedure; and (4) provide confidential attorney access through unmonitored legal calls, visits, and privileged correspondence. (Doc. 4 at 3–4).

## II.    Legal Standard

Temporary restraining orders are permitted only in limited, somewhat dire circumstances. District courts may issue temporary restraining orders to preserve the status quo until there is an opportunity to adjudicate parties' claims. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 n.5 (8th Cir. 1981) (en banc). The standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). The four factors a court must consider when deciding whether to grant a temporary restraining order are (1) likelihood of success on the merits, (2) likelihood

of suffering irreparable harm in the absence of preliminary relief, (3) the balance of the equities, and (4) whether a restraining order is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dataphase Sys., Inc.*, 640 F.2d at 114 (same factors). "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted). Further, a temporary restraining order should show likelihood of irreparable harm. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318–19 (8th Cir. 2009); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Id.*

### III.   Analysis

#### A. Requests 1 and 2

Frost's first and second requests are: (1) to have Frost promptly evaluated by a physician within 48 hours for mental and physical complications arising from his hunger strike and (2) to ensure Frost is provided appropriate follow up care for any complications/conditions. (Doc. 4 at 14–15). The Court denies both these requests because Frost fails to demonstrate that he is likely to suffer irreparable harm. Irreparable harm is a *very* high bar. "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is *certain* and great *and of such imminence* that there is a clear and present need for equitable relief.'" *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir.1996)).

Here, there is no likely irreparable harm because great harm is not *certain* and *imminent*. With respect to Frost's request to be promptly evaluated by a physician within 48 hours, he cannot show that great harm will occur if this does not occur. His only complaint at his last medical appointment was nausea—a symptom his counsel admits he experienced, and his medical records reflect, he experienced even before the hunger strike (Doc. 12-1 at 170). And at Frost's May 7 medical appointment, a physician performed an exam and did not suggest additional care but noted that Frost

3

could request additional follow up care (Doc. 12-2 at ¶ 12).  At the hearing, Frost's attorney admitted she was not aware that Frost had asked for follow-up care. Further, the medical record suggests that Frost has regained a fair amount of the weight he lost during the hunger strike.  Frost reported that he weighed 170 pounds before the strike, decreased to weighing 155.4 pounds during the strike, and has rebounded to 163 pounds.  (Doc. 12-1 at 9, 133).  As Frost's attorney said at the hearing, the most we can say is "we don't know what we don't know."  But that's not enough to show a *likelihood* of irreparable harm.

With respect to Frost's request that Defendants ERDCC Warden Richard Adams and Missouri DOC Director Trevor Foley ensure that Frost is provided appropriate follow up care for any complications/conditions, again, this fails for lack of likely irreparable harm.  As noted, Frost has not even demonstrated that he has asked for follow-up care, he is gaining weight, and he was seen by a physician who noted no abnormalities.  There is no likelihood of irreparable harm for Requests 1 and 2, and Frost's request for a TRO on these bases is denied.

### B.  Requests 3 and 4

Frost's third and fourth requests are: (3) that the Court prevent retaliation against Frost for filing the present Action, contacting counsel, and initiating the IRR (informal resolution request) and grievance procedure; and (4) that the Court order that Frost be provided confidential attorney access through unmonitored legal calls, visits, and privileged correspondence. (Doc. 4 at 15).  The Court denies these requests for the same reason as the first and second—because Frost has not demonstrated a likelihood of irreparable harm.

With respect to access to counsel, Frost's counsel indicated at the hearing that the irreparable harm Frost is alleging is that he will not be able to pursue his underlying claims through to the merits because of lack of access to his attorney.  At this point, this is too speculative to constitute a likelihood of irreparable harm.  One alleged instance of damaged mail and one alleged instance of being denied a call with his attorney is not enough to demonstrate that Frost will be denied access to the courts or to his civil attorney—the constitutional claims underlying his § 1983 claim.

(Doc. 8 at ¶ 77, 83).  There is no evidence that Frost currently is being denied a call with his attorney or that he will continue to be denied calls or other correspondence with his attorney.  And there is evidence that Frost is keeping track of what his claims are through correspondence with his mother. (Doc. 8-2).  Though the Court's determination on this claim could change based on additional evidence, the Court currently does not believe that there is a likelihood that Frost will not be able to pursue his claims in Court or access his attorney.

With respect to Frost's alleged thwarted access to the IRR procedure, this too is not likely to cause irreparable harm.  As Frost's attorney admitted, a claimant need not exhaust prison administrative remedies if he can show impossibility of doing so, and lack of access to the IRR procedure is a type of impossibility.  (Doc. 4 at 11–12); *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015).  With respect to the argument that Frost will lose track of what has happened and what claims he would have brought, the Court does not believe this is likely. Frost's counsel admits that Frost is keeping track of what is happening to him, and this Court has seen evidence that he is doing this partially through text messages with his mother.  (Doc. 8-2).  Lack of access to the IRR procedure is not likely to cause Frost irreparable harm.

With respect to Frost's request that this Court order the Defendants not to retaliate against Frost, at this point there is no likelihood of irreparable harm either. There is no indication that Defendants intend to retaliate against Frost, meaning that irreparable harm fails for lack of imminence.

CONCLUSION

Because Frost fails to demonstrate, at this point, a likelihood of irreparable harm, the Court denies his request for a TRO.  Frost's Motion for a Temporary Restraining Order (Doc. 3) is **DENIED**.

**SO ORDERED,**

This 19th day of May, 2026.

_____
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

6