**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| JOHN LEE FROST, <br><br>     *Plaintiff,* <br><br> v. <br><br> RICHARD ADAMS, *et al.,* <br><br>     *Defendants.* | No. 4:26-cv-00709-MAL |

**MEMORANDUM & ORDER**

Before the Court is Plaintiff Frost's amended motion for a preliminary injunction (Doc. 23).  For the following reasons, the Court **DENIES** the motion.

### I.  Facts & Background[1]

Plaintiff Frost is an inmate at the Eastern Reception, Diagnostic, and Correctional Centner ("ERDCC") (Doc. 60 at ¶¶ 2, 11).  In February 2026, Frost was accused of masturbating in the presence of a female guard.  (*Id*. at ¶ 3; Doc. 38 at 6).  Frost, who was in general population, was then moved to administrative segregation after this incident  (Doc. 60 at ¶¶ 36, 3).  Insisting on his innocence, Frost initiated hunger strike lasting over a month  (*Id*.).

Frost alleges that during his time on his hunger strike, Defendants did not adequately monitor his condition or provide appropriate medical care  (*Id*. at ¶ 4).  In addition to inadequate medical care, Frost also maintains that Defendants retaliated against him for filing this suit, availing himself of the prison grievance process, and retaining an attorney  (*Id*. at ¶¶ 320–344; Doc. 24 at 9–10).  At the ERDCC, inmates

---

[1] Frost filed an Amended Complaint after filing a motion for a preliminary injunction and after the preliminary injunction hearing, which no party opposed (Doc. 57).  The Amended Complaint contains more details and allegations (Doc. 60).  The Court references the Amended Complaint for establishing the factual allegations.

1

may access the grievance procedure by initiating an informal resolution request ("IRR") (Doc. 60 at ¶ 169). At the preliminary injunction hearing, parties noted that this procedure takes place using paper forms (Tr. at 43–44). If an inmate wishes to file an IRR, they must do so within fifteen days from the date of the incident (*Id.* at 43). The facility shall respond within forty days of receipt, and if the inmate wishes to appeal, they must do so within five days of the outcome of the grievance (*Id.* at 44–45). Frost alleges that his access to the IRR process was obstructed because Defendants repeatedly denied him access to pens and paper necessary to initiate the grievance procedure (Doc. 60at ¶ 174). Additionally, Frost alleges he could not submit grievances within the required seven days because Defendants failed to provide access to the process (*Id.* at ¶ 183). Frost alleges Defendants interfered with his access to counsel by obstructing receipt and return of legal mail, damaging or withholding correspondence, denying Frost materials necessary to contact and write to counsel, and failing to provide reasonable means to confidential attorney communication (*Id.* at ¶ 357).

Frost's underlying Second Amended Complaint brings eight counts: (1) deliberate indifference to serious medical need, (2) excessive use of force and unreasonable use of restraint, (3) failure to protect Frost from a substantial risk of serious harm, (4) retaliation for exercise of constitutional rights, (5) obstruction of Frost's access to counsel and confidential legal communications, (6) failure to train under 42 U.S.C. § 1983, (7) declaratory relief regarding ERDCC's grievance procedure, and (8) assault. (*Id.* at 39–75). Frost's claims regarding access to the grievance procedure, access to his counsel, and retaliation serve as the basis for his motion for a preliminary injunction (Doc. 24).

Frost filed a motion for a temporary restraining order on May 8, 2026 (Doc. 3). The Court held a hearing and denied Frost's motion on the basis that Frost failed to demonstrate a likelihood of irreparable harm (Doc. 20). Frost then filed an amended motion for a preliminary injunction (Doc. 23), and the Court held a hearing on that motion on July 2, 2026 (Doc. 53). Frost's amended motion for a preliminary injunction is directed at ERDCC Warden Richard Adams and Missouri Department of

2

Corrections Director Trevor Foley and asks the Court to direct these Defendants to (1) prevent retaliation against Frost for filing the present action, for availing himself of the administrative grievance process, or for any other action taken by counsel or outside advocates, (2) ensure that Frost has meaningful access to the administrative grievance procedure, and (3) provide confidential attorney access through unmonitored legal calls, visits, and privileged legal correspondence (Doc. 24 at 15).

## II.    Legal Standard

A preliminary injunction is "an extraordinary remedy." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  In determining whether to grant a preliminary injunction, the Court considers four factors: (1) whether the movant is likely to succeed on the merits, (2) whether the movant is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities, and (4) the public interest.  *Winter*, 555 U.S. at 20; *see also Dataphase Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (same factors).

## III.    Application of Law to Facts

The Court declines to grant Frost's application for a preliminary injunction because Frost has failed to demonstrate irreparable harm.  Frost argues that the irreparable harm prong is met because courts often presume irreparable harm upon a showing of a constitutional violation (Doc. 24 at 5).  Frost asks this Court to consider that where a constitutional violation is shown, irreparable harm is presumed (*Id.* at 6–7).  Frost argues that he is expecting ongoing constitutional deprivations, including retaliation, interference with protected grievance activity because of his inability to access the IRR procedure, and obstruction of the attorney-client relationship (*Id.* at 7).  Frost urges that even if the Court does not presume irreparable harm because of a constitutional violation, he still meets the irreparable harm factor because the record supports there is no adequate remedy to protect him from continued retaliation, administrative grievance obstruction, and attorney-client interference (*Id.* at 7).  Defendants argue Frost has not demonstrated irreparable harm because

3

Frost has failed to describe actual harms with any sort of actuality or imminence (Doc. 38 at 4).

### i.      Irreparable Harm Legal Standard

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1017 (8th Cir. 2023) ("In most instances, constitutional violations constitute irreparable harm."). [2]   However, when asserting a possible constitutional violation, a plaintiff must still demonstrate that irreparable injury is *likely in the absence of an injunction. Morehouse Enterprises*, 78 F.4th at 1017; *see Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1156 (8th Cir. 2021) (upholding district court's denial of a preliminary injunction where plaintiff failed to demonstrate any likelihood that a city's purported unconstitutional policy would be applied to him in the future). In *Maixner v. Eidsness*, the Eighth Circuit vacated a district court's determination that because plaintiffs demonstrated likelihood of success on the merits of their First Amendment retaliation claim, the other preliminary injunction facts were also met. No. 25-2101, 2026 WL 2040563, at *1 (8th Cir. July 15, 2026). The Court held that district courts must separately inquire into irreparable harm. *Id.* at *2. The Eighth Circuit noted that *Elrod* ordered an injunction where it was clear that First Amendment interests were either threatened or impaired at the time relief was sought, but that not every First Amendment claim

---

[2] The Court notes that the presumption of irreparable harm for constitutional violations is not a settled area of law. *See* Anthony DiSarro, *A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional Litigation*, 35 HARV. J.L. & PUB. POL'Y 743, 759–60 (2012) (noting that some circuits presume irreparable harm for all constitutional claims and some circuits have limited the presumption to the First Amendment context). Because the Eighth Circuit has applied this presumption—though a broad presumption—beyond the First Amendment context, the Court will apply this presumption outside the First Amendment context as well. *See McDonell v. Hunter,* 746 F.2d 785, 787 (8th Cir. 1984) (observing that violation of privacy is an irreparable harm).

involves an immediate loss of First Amendment freedoms. *Id.* at \*2 (citing *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 894 (8th Cir. 2024). The Eighth Circuit went on to explain that a plaintiff alleging a First Amendment violation must make a clear showing of *likely* imminent irreparable harm. *Id.*

### ii.   Analysis

The Court declines to issue a preliminary injunction because Frost has failed to demonstrate that irreparable injury is imminently likely in the absence of an injunction. Frost's analysis of the irreparable harm prong ignores the fact that even if he alleges a past constitutional violation (and even if the court presumes that loss of constitutional rights is irreparable), he must still demonstrate that the harm is *likely* to occur again in the absence of a preliminary injunction. Frost argues that he is seeking injunctive relief from ongoing constitutional deprivations. However, the record does not demonstrate that these alleged constitutional violations are actually ongoing. Rather, Frost's conclusory allegations speak to the merits of the underlying suit. "A preliminary injunction is not the proper vehicle for addressing all of the concerns" Frost "raised in [his] lawsuit, which remain to be decided in the District Court in the upcoming proceedings." *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 691 (8th Cir. 2003).

Frost alleges three types of constitutional violations: (1) retaliation, (2) interference with protected grievance activity, and (3) obstruction of the attorney-client relationship (Doc. 24 at 7). The Court discusses each in turn.

### a. Retaliation

Frost has not demonstrated that he is likely to suffer retaliation for filing this present action. Frost conclusorily states that the "record supports a strong inference that there is no adequate remedy at law to protect [him] from continued retaliation." (Doc. 24 at 7). Frost fails to explain why alleged retaliation in the past means that he is likely to experience retaliation in the future. As the Eighth Circuit has explained, for there to be irreparable harm for First Amendment violations, a plaintiff must demonstrate "an *immediate* threat to their First Amendment right." *Maixner*, 2026 WL 2040563, at \*2–3 (emphasis added). Frost has simply failed to demonstrate

any likelihood of immediate harm.  Per the evidence at the preliminary injunction hearing, Frost is currently in general population (thus not retaliatorily housed in segregation) (Tr. at 76, 105).  It was in segregation that Frost alleged he was having problems with completing IRR forms, not in general population (*Id.* at 22).  Frost also has access to IRR forms and writing utensils (and thus is not being retaliated against for using the grievance procedure) (*Id.* at 76–77).  He also is not being unfairly prohibited access to his counsel (thus not being retaliated against for hiring an attorney).[3]  The record also does not support an inference that Frost is likely to be retaliated against for bringing this present action or for communicating with counsel.  Frost does not point to any concrete evidence which would suggest otherwise.

Frost argues "Defendants recently placed Mr. Frost into the same housing unit where the events that initially led to his hunger strike transpired, with the same custody staff and inmates, without any meaningful resolution of the issues that spiraled into the necessity of this litigation." (Doc. 24 at 7).  This allegation does not speak at all to the likelihood of Frost's constitutional rights being violated.  Prisons may not violate inmates' constitutional rights, but they are not required to house inmates in places that produce the least amount of friction for an inmate.

### b.  Interference with protected grievance activity

Because denial of access to prison grievance procedures are not constitutional claims, *see Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002), the Court does not presume irreparable harm.  To demonstrate irreparable harm, Frost must show that "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).  Frost has not demonstrated imminent harm with a clear and present need for equitable relief.

Frost has not demonstrated it is certain Defendants will interfere with the grievance process.  Frost's Complaint alleges that he repeatedly sought access to the IRR (informal resolution request) and grievance processes but was unable to

---

[3] The Court discusses access to counsel in more detail in Section III (ii)(c).

meaningfully access the procedures because he was denied writing utensils and grievance forms (Doc. 60 at ¶¶ 404–405). Additionally, ERDCC requires an inmate to submit an IRR form within fifteen days from the date of the incident, but forms were not granted to Frost within the policy-mandated time frame. (*Id.* at ¶¶ 169, 405).

The preliminary injunction hearing assuaged all these concerns. Frost testified that he is now in general population where he has access to pens and forms (Tr. at 76–77). He also testified that he borrowed pens in the past from other inmates to complete his forms during times he alleges staff confiscated his pens (*Id.* at 83–84). Frost has filled out IRR forms since being back in general population, and they are still making their way through the procedure (*Id.* at 66, 76, 135). There is no indication at this point that Frost's IRR forms will not be considered properly by ERDCC staff. Sarah Miller, who is the grievance coordinator at ERDCC, testified that she had investigated Frost's grievances and that there are still some grievances pending (*Id.* at 135). Further, Frost used the grievance procedure after being accused of masturbating in December 2025 (while he was in general population), and the accusations were expunged (*Id.* at 17–18, 94, 167). This demonstrates that Frost's claims have successfully navigated the IRR process in the past, and there is no indication that Frost will not be able to continue to avail himself of a grievance process that sometimes works in his favor in the future.

Frost's claims regarding not receiving IRR forms in a timely manner also do not demonstrate a likelihood that he will not be able to utilize the IRR procedure. Officer Lisa Hooker—the ERDCC Corrections Officer and Program Specialist—testified that though ERDCC's policy is that inmates should submit IRR forms within fifteen days of the incident, she frequently waives this requirement and allows inmates to submit forms past that time frame (Doc. 60 at ¶ 15). Frost has also demonstrated that he was able to preserve his grievances through emails to his mother and submit forms later (Tr. 46, 83, 98–99, 114; Doc. 60-1–60-13). But even if Officer Hooker did not flex the timeframe for Frost in the past, there is no indication that Frost's access to IRR forms will continue in the future because Officer Hooker

7

provides IRR forms only to inmates in segregation, not to those in general population where Frost is now.  (Tr. at 113).

### c.  Obstruction of attorney-client relationship

Frost has not demonstrated that Defendants are likely to imminently obstruct his attorney-client relationship, and therefore Frost has not demonstrated that he is likely to suffer imminent irreparable harm.  The record simply does not reflect that ERDCC is likely to obstruct Frost's access to his attorney.  Frost is now in general population and can make phone call requests  (Tr. at 142–43).  At the preliminary injunction hearing, Bradley Lott—the ERDCC Litigation Coordinator—testified that the inmate is the one who must place the call to their attorney, putting the onus on communication on Frost.  Lott further testified that, since the April incident, there have been no instances in which Frost has been unable to contact his attorney, suggesting that there is no likelihood that Frost will be deprived of counsel in the imminent future (*Id*. at 143).  At the preliminary injunction hearing, Frost's attorney was well prepared, suggesting that her client communication is sufficient.

Even if Frost could demonstrate that it is likely that ERDCC will obstruct his attorney access, he would not be likely to succeed on the merits.  In *Bounds v. Smith*, 430 U.S. 817, 828 (1977) the Supreme Court held that there is a fundamental constitutional right of access to the courts, though the Court has recognized the basis of the constitutional right of access to courts is unsettled. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).  To prove an actual injury, the Plaintiff must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded. *Id*.  And while prisoners have a right of access to the courts, they do not have a right to any particular means of access, such as unlimited telephone use. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012).

8

Frost has not demonstrated a hinderance to his legal claim.  His attorney has been able to file motions on his behalf, obtain exhibits, has not missed a filing deadline, and has been able to communicate with him (even if it is not as frequently as he desires).  *See McMaster v. Pung*, 984 F.2d 948, 952-53 (8th Cir. 1993) (holding that a prisoner's Sixth Amendment right to counsel was not violated by a ban on contact visits with his female attorney and restrictions on his phone use).  Isolated instances of opening prisoners' legal mail without evidence of improper motive does not interfere with an inmate's right to access the courts.  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012).  And here, there was no evidence that the one-time opening of Frost's legal mail back in April 2026 was anything but accidental (Doc. 60 at ¶¶ 142–144).  In fact, Frost made his own access to counsel more difficult by *rejecting* the opened legal mail  (Tr. at 88–89).  Frost's remaining claims regarding his alleged denial of access to counsel (such as being denied materials to correspond with counsel or legal spend) fail to demonstrate how he was denied meaningful access to the courts, especially in light of the fact that Frost's attorney has filed almost twenty filings with the Court and has had two multiple-hour hearings with the Court.

CONCLUSION

Plaintiff Frost's amended motion for a preliminary injunction (Doc. 23) is **DENIED.**

**SO ORDERED,**

This 5th day of August, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

9